UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : No. 3:06cr269(MRK) |
| | : |
| NICHOLAS ROJAS | : |

**MEMORANDUM OF DECISION**

On May 16, 2008, following a three-day trial, a jury found Defendant Nicholas Rojas guilty of conspiracy to possess with the intent to distribute, and to distribute, five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One of a Superseding Indictment), and of two counts of use of a telephone to facilitate a drug trafficking felony in violation of 21 U.S.C. § 843(b) (Counts Two and Three).[1] The jury found Mr. Rojas not guilty of a third count of use of a telephone to facilitate a drug trafficking offense (Count Four). Mr. Rojas has moved for judgment of acquittal under Rule 29 of the *Federal Rules of Criminal Procedure* and in the alternative for a new trial under Rule 33. *See* Defendant Nicholas Rojas' Motion for Judgment of Acquittal and Motion for New Trial [doc. # # 1008, 1011]. For the reasons that follow, the Court DENIES Mr. Rojas's Motion for Judgment of Acquittal and Motion for a New Trial.

**I.**

"'It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden.'" *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004) (quoting *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citation and quotation

---

[1] Mr. Rojas was tried together with Defendant Gwayne Fisher, *United States v. Fisher*, No. 3:07cr120(MRK), who was also convicted of a conspiracy and other charges. Mr. Fisher also moves for a judgment of acquittal and for a new trial. The Court has docketed today its decision regarding Mr. Fisher.

marks omitted)).  "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor," *id.*, the conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see United States v. Hardwick*, 523 F.3d 94, 100 (2d Cir. 2008).  The Court must consider the Government's case "in its totality rather than in its parts, and may be satisfied by circumstantial evidence alone." *United States v. Hawkins*, 547 F.3d 66, 70-71 (2d Cir. 2008).  As the Second Circuit has instructed:

> While a conviction based on speculation and surmise alone cannot stand, the jury's verdict may be based entirely on circumstantial evidence, and may be inferred from the evidence.  So long as the inference is reasonable, it is the task of the jury, not the court, to choose among competing inferences.  Thus, where either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter.

*United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal citations and quotation marks omitted).

In cases of conspiracy, as here, "deference to the jury's findings is especially important because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *Morgan*, 385 F.3d at 205 (quotation marks omitted);  *see United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992) (citation and internal quotation marks omitted).  That said, the record must nonetheless permit a rational jury to find beyond a reasonable doubt: "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy."  *Santos*, 541 F.3d at 70 (internal citations omitted). And in a conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), the Government must also prove beyond a reasonable doubt  "(4) that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the

drug type and quantity charged." *Id.* at 70-71.

Rule 33 permits the Court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33; *see United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). The Court has "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). Though a district court is entitled on a Rule 33 motion to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses, it must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) (internal citations and quotation marks omitted). Accordingly, the Court should exercise its discretion under Rule 33 with caution and sparingly and with due respect for the jury's verdict.

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.

*Ferguson*, 246 F.3d at 134 (internal citations and quotation marks omitted).

## II.

The principal issue raised by Mr. Rojas is whether the record evidence was sufficient to support a finding beyond a reasonable doubt that Mr. Rojas was a member of the drug conspiracy

3

charged, rather than merely a simple buyer of drugs.[2] This case proceeded to verdict before the Second Circuit issued its decision in *United States v. Hawkins*, 547 F.3d 66 (2d Cir. 2008), though after its decision in *United States v. Wexler*, 522 F.3d 194, 207 (2d Cir. 2008). Mr. Rojas's main defense at trial was that he was an impoverished drug addict who was merely a buyer of drugs and not a member of the drug conspiracy run by Mr. Luis A. Colon, who testified against Mr. Rojas at trial. Accordingly, the Court gave a buyer-seller charge to the jury that was influenced, in part, by the Second Circuit's opinion (and the concurring and dissenting opinion of Judge Reena Raggi) in *Wexler*.

Therefore, during the course of the Court's charge on conspiracy, the Court instructed the jury as follows:

> The second element, which the Government must prove beyond a reasonable doubt to establish the crime charged, is that Mr. Rojas and Mr. Fisher each knowingly, willfully and voluntarily became a member of the conspiracy under consideration.
> . . .
>
> I want to caution you, however, that a Defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not make the Defendant a member. A person may know, associate with or be friendly with a criminal, without being a conspirator. Mere similarity of conduct or the fact that they may have assembled together or communicated does not necessarily establish proof of the existence of or membership in a conspiracy.
>
> I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a Defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that Defendant a member of the conspiracy. More is required under the law. What is necessary is that the Defendant

---

[2] Though nominally, Mr. Rojas has challenged his convictions on the telephone counts, there is no basis for such a challenge, as Mr. Rojas's counsel acknowledged at oral argument. The Government introduced at trial numerous wiretapped conversations in which Mr. Rojas used a telephone to facilitate a drug transaction.

> must have participated with knowledge of at least some of the unlawful purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends. *Thus without more, the mere existence of a buyer-seller relationship is insufficient to establish membership in a conspiracy. In deciding whether parties to a sale of narcotics are merely buyer and seller or instead are co-conspirators, the jury may properly consider a number of factors, including the length of time that the buyer affiliated with the seller, whether there was a common goal among the parties to advance the conspiracy's interests, whether there was an agreement or understanding to redistribute drugs, the established method of payment, the extent to which the transactions were standardized, the quantities of drugs involved and whether there was a mutual trust between the buyer and seller. None of these factors is dispositive, nor is this listing intended to be exhaustive. In the end, the jury must determine whether on the basis of all of the evidence, the Government has proved beyond a reasonable doubt that the Defendant under consideration knowingly and willingly entered into an agreement or understanding with one or more persons to accomplish the goals of the charged conspiracy – namely, the distribution of the particular drugs charged.*
>
> In sum, a Defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement that is to say, a conspirator.

(Emphasis added). As it turns out, the Court's charge appears to be fully consistent with the Second Circuit's decision in *Hawkins*, and as a result, Mr. Rojas does not take issue with the Court's buyer-seller charge.

What Mr. Rojas does challenge is whether the evidence would permit a conclusion beyond a reasonable doubt that he had joined Mr. Colon's drug trafficking conspiracy. To make that determination, the Court must consider the Second Circuit's recent decision in *Hawkins*, in which that court sought to set forth the considerations that are important in assessing whether a jury had a proper basis for concluding beyond a reasonable doubt that a defendant had crossed the line from being a mere buyer of drugs to becoming a member of a drug conspiracy. Warren Hawkins was convicted by a jury of conspiracy to possess with the intent to distribute, and to distribute, fifty

grams or more of cocaine base, but his conviction was set aside by the district court on the ground that the evidence showed that Mr. Hawkins was not a member of the Luna drug conspiracy but only a mere buyer of drugs from Mr. Luna. *Hawkins*, 547 F.3d at 68-70.

The Second Circuit reversed the district court and reinstated the jury's verdict. *Id.* at 68. The court began its analysis by explaining that a conspiracy requires proof that two or more persons agreed to participate in a "joint venture intended to commit an unlawful act," and that while a transfer of drugs from a seller to a buyer "necessarily involves agreement, however brief, on the distribution of a controlled substance," the "sale agreement itself cannot be the conspiracy to distribute, for it has no separate criminal object." *Hawkins*, 547 F.3d at 71 (quotation marks omitted); *see Wexler*, 522 F.3d at 208. Therefore, the Second Circuit emphasized, "[w]ithout more, the mere buyer-seller relationship is insufficient to establish conspiracy." *Hawkins*, 547 F.3d at 71; *accord United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989). The court explained that the "'rationale for holding a buyer and a seller not to be conspirators is that in the typical buy-sell scenario, which involves a casual sale of small quantities of drugs, there is no evidence that the parties were aware of, or agreed to participate in a larger conspiracy.'" *Hawkins*, 547 F.3d at 72 (quoting *United States v. Medina* 944 F.2d 60, 65 (2d Cir. 1991)). And this is true even if the seller is aware that the buyer intends to resell the narcotics. *Id.* at 74 ("It is axiomatic that more is required than mere knowledge of the purpose of a conspiracy."). However, circumstantial evidence may support the jury in concluding beyond a reasonable doubt that the defendant took the "step from knowledge to intent and agreement, provided that the evidence of knowledge is clear, not equivocal." *Id*. (quotation marks omitted).

6

The question then is whether there is sufficient evidence to support an inference that a defendant agreed to participate in the conspiracy beyond simply buying or selling drugs, and when there is such evidence, the Second Circuit pointed out, it has upheld conspiracy convictions. *Id.* at 72-73 (discussing *United States v. Miranda-Ortiz*, 926 F.2d 172, 176 (2d Cir. 1991)).[3] As the Second Circuit explained, the "critical inquiry in each case is whether the evidence in its totality suffices to permit a jury to find beyond a reasonable doubt that the defendant was not merely a buyer or seller of narcotics, but rather that the defendant knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale." *Id.* at 73-74. While the court declined to provide an exhaustive list of factors to guide what it termed "a highly fact-specific inquiry," the Second Circuit did identify several relevant factors, including "'whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit ("fronting"), and the quantity of drugs involved.'" *Id.* at 74 (quoting *United States v. Hicks*, 368 F.3d 801, 805 (7th Cir. 2004) and *United States v. Gibbs*, 190 F.3d 188, 199 (3d Cir. 1999)). The Second Circuit hastened to add, however, that "[n]o single factor is dispositive" and that the "dispositive inquiry remains whether a rational jury could find beyond a reasonable doubt that a defendant has agreed to join and participate in the conspiracy." *Id.*

---

[3] In *Miranda-Ortiz*, there was evidence that the defendant had twice offered to sell drugs to an alleged coconspirator and that the two men had exchanged beeper numbers. 926 F.2d at 176. The court in *Hawkins* pointed out that although the defendant in *Miranda-Ortiz* argued that this evidence merely showed that the defendant was offering to supply the buyer for his personal use, the court held that the exchange of beeper numbers permitted the jury to conclude that the buyer was likely a distributor, rather than someone seeking drugs only for his personal use. *Hawkins*, 547 F.3d at 72-73. According to the Second Circuit, other evidence, including the buyer's inability to obtain cocaine for a repeat customer and his desire to acquire a kilogram of cocaine, also made the defendant aware that the buyer was a distributor. *Miranda-Ortiz*, 926 F.2d at 176.

Turning to the evidence against Mr. Hawkins, the Second Circuit noted at the outset that the parties did not dispute that the Government had adequately proved that the Luna conspiracy existed, that Mr. Hawkins knew of the Luna conspiracy, that he purchased cocaine from Mr. Luna, that he intended to resell at least some of the purchased cocaine, and that Mr. Luna knew that. *Id.* The court found three factors supported the jury's finding beyond a reasonable doubt that Mr. Hawkins knowingly and intentionally joined the Luna drug conspiracy.

First, the tape recordings played at trial provided "direct proof of Hawkins's intent to redistribute the cocaine he purchased or sought to purchase from Luna and Luna's awareness of the same." *Id.* at 75; *see id.* at 76 ("The evidence in this case clearly demonstrates that Hawkins intended to redistribute cocaine and made this known to Luna."). The court reached this conclusion even though the quantities of cocaine at issue in the case were, as the court described them, "extremely small" – eight-balls, or 3.5 grams – and the fact that Mr. Hawkins was an addict who also personally used the drugs he acquired from Mr. Luna. *Id.* at 77 ("A large transaction or an accumulation of deals suggests more trust, garnered over a period of time, as well as a greater likelihood that the parties have 'put their heads together' to figure out planning, organization, and ways to conceal their activities." (quotation marks omitted)).

Second, the evidence showed that Mr. Hawkins was not just a "customer who happened to intend to redistribute cocaine independently," but rather a member of the Luna conspiracy. *Id.* at 76. The court reached this conclusion because of evidence that Mr. Hawkins had purchased from Mr. Luna four times in a two-week period, and therefore their relationship was, in the court's words, "more than a transient" one. *Id.* The court also noted that Mr. Hawkins contacted Mr. Luna twice when Mr. Hawkins had identified potential customers and that Mr. Hawkins had Mr. Luna's cell

phone number "in order to contact Luna more readily in the future." *Id*.

The court acknowledged that a Luna associate had testified that Mr. Hawkins was neither a drug dealer generally nor a member of the Luna organization, but rather was a "go-between." *Id.* at 77. Although evidence that a defendant helped a willing buyer locate a willing seller would be insufficient to establish membership in a conspiracy, the Second Circuit stated that there was additional evidence in the case that would permit a jury reasonably to infer, not speculate, that Mr. Hawkins had agreed to carry out the objectives of the Luna conspiracy. *Id.* at 77. Furthermore, the jury was not required to accept the testimony of the Luna associate. *Id.* That their dealings were not standardized also did not undermine the jury's verdict:

> Hawkins, Luna, and [Luna's associate] discussed purchases, chatted about personal matters, and made arrangements to meet. The extent of such interactions in this case does not seem out of the ordinary for any business venture, especially an illegal one. We cannot say that any transaction costs borne by Hawkins and Luna were so high as to create a reasonable doubt where, as here, the jury was instructed that a mere buyer-seller relationship was insufficient and the evidence supports a finding that Hawkins was not only a customer but a knowing and willing participant in Luna's distribution of cocaine.

*Id.*

Third, and finally, the Second Circuit observed that there was evidence "reflecting mutual trust between Hawkins and Luna." *Id*. at 76. That evidence consisted of Mr. Hawkins telling Mr. Luna that he wanted to buy from Mr. Luna rather than other dealers, of Mr. Luna giving Mr. Hawkins his cell phone number, and of Mr. Luna's willingness to front drugs to Mr. Hawkins, though that credit transaction never actually took place. *Id.* The court reached this conclusion despite what it termed as the "absence of prolonged cooperation in this case." *Id.* As the court explained, "[t]here is no rule prohibiting a conspiracy conviction based on sufficient evidence that a defendant joined the conspiracy only shortly before the government dismantled it." *Id.* at 76-77.

In sum, the Second Circuit concluded that "[a]lthough the scope of Hawkins's participation in the conspiracy might not have been especially significant, the evidence was sufficient to establish his intentional participation in the charged conspiracy beyond a reasonable doubt." *Id.* at 78.

**III.**

Considering the evidence in this case in the light of *Hawkins*, the Court has no doubt that the evidence in its totality suffices to permit a jury to find beyond a reasonable doubt that Mr. Rojas was not merely a buyer or seller of narcotics, but rather that he knowingly and intentionally participated in the Colon narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale of drugs. The jury was given a buyer-seller charge, so it knew that a mere buyer-seller relationship was insufficient. More than that, however, the evidence was compelling – indeed, overwhelming – that Mr. Rojas was more than a mere buyer of drugs from Mr. Colon.

As in *Hawkins*, Mr. Rojas agreed that there was a Colon drug trafficking organization, that he purchased drugs from Mr. Colon, that he both used and redistributed the drugs he obtained from Mr. Colon, and that Mr. Colon knew that he was redistributing the drugs. However, unlike *Hawkins*, the evidence at trial showed that Mr. Rojas was a frequent, not episodic, customer of Mr. Colon and that they had been doing business with one another since approximately 2005. Their relationship was thus not "transient," but rather deep and long-standing.

As was apparent from the testimony and the telephonic recordings played to the jury, Mr. Rojas engaged in hand-to-hand drug transactions with the crack cocaine he purchased from Mr. Colon. Thus, Mr. Rojas made it clear to Mr. Colon that he would redistribute the drugs Mr. Colon provided, and Mr. Colon knew this. In fact, Mr. Colon would provide Mr. Rojas drugs on credit and

observe Mr. Rojas as he sold the Colon drugs on the streets of Waterbury, thus enabling Mr. Colon to collect the money Mr. Rojas had earned on the Colon-provided crack. *See United States v. Dortch*, 5 F.3d 1056, 1065 (7th Cir. 1993) ("'fronting' suggests the existence of a conspiracy because it appears both that the seller has a stake in the success of the buyer's activities and that a degree of cooperation and trust exists beyond that which results from a series of isolated and sporadic transactions.").

Unlike in *Hawkins*, there were numerous transactions between Mr. Rojas and Mr. Colon over the years, in standardized amounts. Mr. Rojas was also familiar with the other members of Mr. Colon's drug trafficking organization and asked Mr. Colon to intercede with other conspirators to convince them to provide crack to Mr. Rojas. Mr. Rojas thus dealt with other members of the Colon drug trafficking organization. As in *Hawkins*, the jury also heard conversations between Mr. Rojas and Mr. Colon in which Mr. Rojas spoke of his customers and his need for drugs to satisfy his customers' narcotics needs.

There was considerable mutual trust between Mr. Colon and Mr. Rojas, which was evidenced not only in the numerous conversations played to the jury but in Mr. Colon's own testimony. Obviously, Mr. Rojas had Mr. Colon's cell phone number and used it often. Mr. Colon also fronted drugs to Mr. Rojas on numerous occasions. In one conversation (Ex. 45), Mr. Rojas refers to Mr. Colon as his "partner," and Mr. Colon testified that he considered Mr. Rojas part of his drug trafficking organization. Mr. Rojas warned Mr. Colon when he discovered that others intended to break into Mr. Colon's apartment. And Mr. Colon vouched for Mr. Rojas's creditworthiness with other members of the Colon drug trafficking organization. When Mr. Rojas was arrested, Mr. Colon provided the bail money to release him from jail. Mr. Colon testified that he did so not only because

11

he genuinely liked Mr. Rojas, but also because he wanted Mr. Rojas to get back on the streets to distribute Mr. Colon's drugs.

When confronted with this evidence, which is far more compelling than the evidence presented in *Hawkins* and totally unlike that presented in *Gore* or *Wexler*, Mr. Rojas makes two arguments. First, he says that the fact that he was an impoverished drug addict who was selling drugs to feed his insatiable drug habit makes it impossible for the jury to have found beyond a reasonable doubt that he had joined the Colon drug conspiracy. The Court disagrees. Mr. Rojas's motivation for joining the Colon drug conspiracy is not determinative. As Mr. Rojas's counsel acknowledged at argument, had Mr. Rojas been addicted to fancy cars, flashy jewelry or women, rather than drugs, the evidence would have been more than sufficient to support the jury's verdict on the conspiracy charge. What Mr. Rojas did with the money he made (or the drugs he was given) by peddling Mr. Colon's drugs cannot possibly be dispositive, as Mr. Rojas suggests. That Mr. Rojas was motivated to redistribute Mr. Colon's drugs because of his drive to put narcotics into his system does not alter the fact that there was substantial evidence that would support a conclusion beyond a reasonable doubt that Mr. Rojas was aware of the illegal goals of the Colon drug trafficking organization, knowingly joined that organization, and intentionally furthered that organization's goals by distributing Mr. Colon's drugs in downtown Waterbury. Under *Hawkins* – where the defendant also was a drug addict – that is sufficient to support the jury's conspiracy verdict.

Mr. Rojas's second argument is that Mr. Colon's testimony was not corroborated. That, too, is not true. Mr. Colon's testimony was fully corroborated by the wiretaps and the other witnesses who testified to Mr. Rojas's role in the Colon drug enterprise. *See, e.g.*, *United States v. Florez*, 447

F.3d 145, 155 (2d Cir. 2006) (testimony of a single accomplice is sufficient to sustain a conviction so long as the "testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt"); *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990) (same). The jury, therefore, had every reason to credit Mr. Colon's testimony regarding Mr. Rojas.

Accordingly, the Court will not grant Mr. Rojas's request for a judgment of acquittal under Rule 29. Nor does the Court believe that the jury's verdict represents a miscarriage of justice, which this Court should correct by ordering a new trial under Rule 33. It is clear to the Court that the jury carefully weighed the evidence against Mr. Rojas; indeed, the jury acquitted him of one of the Government's charges. In the circumstances presented by this case, a new trial is not warranted.

**IV.**

The Court DENIES Defendant Nicholas Rojas's Motion for Judgment of Acquittal and Motion for New trial [doc. # # 1008, 1011].

IT IS SO ORDERED,

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 19, 2008.**